IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

**JOSHUA REEVES and SARAH REEVES**                                                  **PLAINTIFFS**

V.                                    **CASE NO. 2:24-CV-2082**

**STATE FARM FIRE AND CASUALTY COMPANY**                                  **DEFENDANT**

## OPINION AND ORDER

Before the Court are Defendant State Farm Fire and Casualty Company's Partial Motion to Dismiss Bad Faith Claim[1] (Doc. 21) and Brief in Support (Doc. 20); Plaintiffs Joshua and Sarah Reeves's Response in Opposition (Doc. 22); and State Farm's Reply (Doc. 25). This case concerns a coverage dispute over a storm-damaged roof. Though the Complaint asserts multiple causes of action, State Farm only seeks dismissal of the bad faith claim.

Mr. and Mrs. Reeves owned a home in Johnson County, Arkansas, that was insured by State Farm. In the spring and summer of 2023, they made storm damage claims related to the home's roof. State Farm denied (or closed) the claims on multiple occasions. The complaint lays out a chronology of State Farm's handling of the claims, including its rejection of four roof inspections that found storm damage. It is alleged that State Farm chose to rely, instead, on a cursory review of the roof by a State Farm

---

[1] Although State Farm styles its Motion as one to dismiss under Federal Rule of Civil Procedure12(b)(6), it is actually a motion for judgment on the pleadings under Rule 12(c), as State Farm filed an Answer (Doc. 18) a few days before filing its Motion. *See Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990) ("Technically . . . a Rule 12(b)(6) motion cannot be filed after an answer has been submitted."). However, the distinction between a motion for judgment on the pleadings and a motion to dismiss "is purely formal, because we review [a] 12(c) motion under the standard that governs 12(b)(6) motions." *Id.*

1

employee—who concluded that any damage to the roof was not caused by the claimed occurrences.  A summary of the factual chronology is as follows:

- **The First Inspection**.  While listing their home for sale in May 2023, the couple had the roof inspected. The roofer advised them that the roof had suffered wind and hail damage and suspected that the cause was a recent April storm.  On June 2, Mr. and Mrs. Reeves forwarded the inspection report to State Farm and made a claim on their homeowner's policy for storm-related roof damage.  (Doc. 4, ¶¶ 8–9).

- **The Second Inspection**. In mid-June, State Farm sent a "third-party roofer" to the home to perform an inspection, take photos, and file a report. The inspection confirmed the presence of wind and hail damage.  *Id.* at ¶ 10.

- **The Third Inspection**. On June 20, a State Farm adjuster informed Mr. Reeves by telephone that the third-party roofer's report "was no good and that someone else would be visiting Plaintiffs' property to provide a new assessment." *Id.* at ¶ 11. State Farm sent an employee, Jakob Westfall, to inspect the roof. According to Mr. and Mrs. Reeves, Mr. Westfall spent less than five minutes inspecting the roof before concluding there was no damage. He did not take any photos. It was his opinion that if the roof was damaged at all, such damage "was caused from being 'old.'" *Id.* at ¶ 12.  So, on June 29, State Farm denied Mr. and Mrs. Reeves's claim.

- **The Fourth Inspection**. A few weeks later, the couple received an offer to buy their home, and the potential buyer had the roof inspected. That inspector reported that the roof had sustained wind and hail damage. Upon

receiving a copy of the report, Mrs. Reeves called her State Farm adjuster, who advised her to reopen her claim for damages. She did so on or about August 9. *Id.* at ¶ 15.

- **The Fifth Inspection**. On August 11, State Farm sent a "neutral third-party roofer" to conduct yet another inspection. As it turns out, this was the very same roofer that State Farm sent to conduct the second inspection. Not surprisingly, he confirmed, again, that the roof had suffered wind and hail damage. *Id.* at ¶ 16. State Farm closed the claim without notice to the Reeves, and later told them to file a new claim. State Farm's explanation was that the April storm was not strong enough to have caused the damage detailed in the inspections, and that a subsequent severe storm on June 13 was a more likely culprit. *Id.* at ¶ 20. So, on August 25, the Reeves filed a new claim.

- **The Sixth Inspection**. To investigate the "new" claim, State Farm sent an employee to jointly inspect the roof with the same third-party roofer that State Farm had sent to conduct the second and fifth inspections. According to Mr. and Mrs. Reeves, the "roofer tried to explain and physically show the agent the damage to [the] roof, but [State Farm's employee] refused to look out of concern for his safety and stated that he felt uncomfortable." *Id.* at ¶ 20.

Through the end of August 2023, Mr. and Mrs. Reeves submitted roof repair estimates totaling more than $20,000. State Farm appraised the covered damage at $1,285.49, which was less than the policy's deductible. *Id.* at ¶ 23. Mr. and Mrs. Reeves

3

became convinced that State Farm "had no intention to act in good faith whatsoever" and decided to repair the roof themselves so that they could sell their home. They paid $22,292.48 out of pocket to repair the roof and brought this suit against State Farm for breach of contract and bad faith. *Id.* at ¶ 24.

According to the Complaint, evidence of State Farm's bad faith includes:

- sending a second person to inspect the roof "for the specific purpose of contradicting the neutral third-party roofer's finding of damages," *id.* at ¶ 31;
- denying Mr. and Mrs. Reeves's valid claims on multiple occasions, *id.* at ¶ 32;
- closing out one outstanding claim without prior notice, *id.* at ¶ 33;
- offering to settle the claim for a paltry amount that was less than the deductible, when the true cost to repair the roof exceeded $20,000, *id.* at ¶ 34; and
- taking too long to evaluate the claim, which prevented Mr. and Mrs. Reeves from selling their home to willing buyers, *id.* at ¶ 35.

State Farm contends in its Motion that even if the above facts are true, they do not state a claim for bad faith. In evaluating the Motion, the Court must consider whether the Complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation and citation omitted). A claim is subject to dismissal if the facts fail to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere "labels and conclusions" or "a formulaic recitation of the elements of the cause of action will not do." *Id.* And the Court is not required to "blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott*, 901 F.2d at 1488.

Turning now to State Farm's 12(c) Motion, the Court finds the Complaint to contain specific non-conclusory factual allegations from which the Court can glean a plausibly stated claim for bad faith. In the context of the six inspections summarized above, it is

4

*plausible* that State Farm twice disregarded the opinion of its own "neutral" professional roofer in favor of adopting an undocumented and non-substantiated opinion of an internal agent or employee, for the purpose of denying the claim. Broadly construed, State Farm's claim decision in the context of these non-speculative allegations, *could* indicate that State Farm acted in bad faith. The Court is certainly mindful that "[t]he components of the tort of bad faith are affirmative misconduct by an insurer, without a good-faith defense, which is dishonest, malicious, or oppressive in an attempt to avoid liability under a policy." *See R.J. Jones Excavating Contractor, Inc. v. Firemen's Ins. Co.*, 324 Ark. 282, 289 (1996). This is a high bar to chin when looking to prove bad faith. For our present purposes, though, the only question is whether the allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations in the Complaint plausibly surpass this threshold requirement.

**IT IS THEREFORE ORDERED** that the Partial Motion to Dismiss Bad Faith Claim (Doc. 21) is **DENIED**.

**IT IS SO ORDERED** on this 13th day of March, 2025.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

5